STATE of Missouri, Respondent,

v.

Paul James BROOKS, Appellant.

No. 62495.

Supreme Court of Missouri,
En Banc.

June 8, 1981.
Rehearing Denied July 14, 1981.

Leslie D. Edwards, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Mark W. Comley, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Convicted on two counts of illegal sale of heroin, defendant was sentenced as a Second Offender to concurrent terms of 13 years on each count. Following affirmance in the Court of Appeals, Eastern District, the cause was transferred under Rule 83.03 to examine for possible conflict in that decision with *State v. Kirkland,* 471 S.W.2d 191 (Mo.1971). We review the cause as though here on original appeal. Art. V, Sec. 10, Mo.Const.; Rule 83.09.

Defendant's assignments of error include: (1) insufficient identification evidence to sustain his conviction; (2) abuse of discretion by the trial court in refusing to strike the prosecutor's remark during opening statement, relating to an informant's "tip" constituting inadmissible hearsay.[1]

A review of the record is necessary to meet defendant's contention concerning sufficiency of the evidence. In so doing we accept as true all evidence whether circumstantial or direct, tending to prove defendant guilty together with all reasonable inferences supportive of the verdict. Further, we disregard those portions of the record contrary to the verdict, mindful that our function is not to weigh the evidence but to determine "whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged." *State v. Kelly,* 539 S.W.2d 106, 109 (Mo.banc 1976), quoting from *State v. Johnson,* 510 S.W.2d 485, 487 (Mo.App. 1974).

---

1. Defendant also asserts as error the court's refusal to grant a mistrial, requested during trial when defendant's objection was *sustained* to the state's attempt to introduce testimony concerning the informant's "tip." This issue is resolved by our determination of point (2).

■ The state's principal witness was Officer Patrick Dickens, assigned to the Narcotics Division of the St. Louis Police Department. Following a "tip", two undercover narcotics agents, Dickens and Bates, armed with a photograph of defendant commenced surveillance of a residence at 2918 Sheridan in the City of St. Louis. These officers witnessed a swirl of activity about the entrance of the house including people exchanging currency for something else through a mail slot next to the front door. Observing a continuing flow of traffic at the front door and into the house during the two days that followed, the officers decided to approach the house at about 9:30 p. m. on February 21, 1978, in an attempt to purchase heroin. As they neared the house, a person resembling defendant, whose photograph they had, motioned from the window for them to come to the front door. Bates remained on the sidewalk but Dickens approached the front porch and saw a man who "appeared to be Brooks" through the openings of the venetian blinds on the window. Reaching the front door Dickens was able to clearly observe defendant through the blinds on the door, and in response to defendant's inquiry, Dickens stated that he wanted "two things", street vernacular for two capsules of heroin. Dickens then slipped 20 dollars through the mail slot and received in return two pink capsules containing the requested drug.

The following evening the Officers returned to the house, making another purchase of heroin in the manner of the previous night. Dickens testified that he and Bates were again able to see defendant through the front window of the house. Defendant was arrested at the house several weeks later.

Although Bates did not testify, Dickens unequivocally identified defendant as the man who sold him the drugs on each occasion.

Jessie Clark, owner of the residence at 2918 Sheridan, testified he had rented the downstairs to defendant and had personally collected rental payments from him. Though defendant testified he was not living at the house when arrested but merely drinking there that night, Dickens in rebuttal testified that when arrested, defendant gave his address as 2918 Sheridan. A submissible case was made and the evidence was sufficient to support the jury's conclusion that defendant sold heroin to Officer Dickens, accordingly defendant's first assignment of error must be denied.

Defendant next contends the trial court abused its discretion in permitting the prosecutor to remark during opening statement, "[the police] work through informants. . . . they received information that narcotics were being sold—heroin was being sold at 2918 Sheridan by Paul Brooks." Defendant's motion to strike was denied, and he asserts this statement constituted inadmissible hearsay, resulting in denial of his right to confront witnesses against him.

■ When measuring the trial court's ruling for possible error, we must remember the scope and manner of opening statement is largely within the discretion of the court which necessarily must rely upon the good faith of counsel in making opening statements to a jury as to material facts they intend to prove. The objective of an opening statement is to introduce the jury to the nature of the cause before them, and it may be utilized by both sides for such purpose. *State v. Thomas,* 526 S.W.2d 893, 896 (Mo.App.1975). The question of whether the trial court abused its discretion in limiting opening statement is examined against a standard different from that employed in a search for error stemming from evidentiary rulings during trial. When the issue concerns the trial court's exercise of discretion relative to opening statements, no error requiring reversal will be found if a challenged statement refers to arguably admissible evidence and the reference was made in good faith with a reasonable expectation the evidence will be produced. *State v. Browner,* 587 S.W.2d 948, 952–53 (Mo.App.1979); *State v. Hodges,* 586 S.W.2d 420, 426 (Mo.App.1979); *State v. Thomas,* 526 S.W.2d 893, 896 (Mo.App.1975).

■ Here evidence as to the informant's observations was "arguably admissible", as the officer's testimony was offered not to prove that the information received was true but rather to explain his surveillance of the house. *State v. Harris*, 571 S.W.2d 443, 446 (Mo.App.1978). It is well established that such testimony is admissible to explain the officers' conduct, supplying relevant background and continuity to the action. *State v. McRoberts*, 485 S.W.2d 70, 73 (Mo.1972); *State v. Barnes*, 345 S.W.2d 130, 131–32 (Mo.1961); *State v. Bright*, 269 S.W.2d 615, 623 (Mo.1954); *State v. Lewis*, 576 S.W.2d 564, 566–67 (Mo. App.1978). Under this rule the triers of fact can be provided a portrayal of the events in question, more likely to serve the ends of justice in that the jury is not called upon to speculate on the cause or reasons for the officers' subsequent activities. Hence, the statement was relevant and, at the very least, arguably admissible to explain the sudden commencement of police investigation at that particular residence. As previously noted, no testimony of the informant's statements came into evidence as defendant's objections were sustained. However, that ruling by the trial court, though favorable to defendant, was erroneous and cannot, as defendant urges, somehow serve as a basis for declaring reversible error in the prior decision of the court during opening statement. Instead, the prosecutor's going forward with the evidence demonstrates a good faith effort to adduce proof of the matters referred to in opening statement.

Defendant cites the recent decision of *State v. Wandix*, 590 S.W.2d 82 (Mo.banc 1979), *cert. denied*, 445 U.S. 972, 100 S.Ct. 1665, 64 L.Ed.2d 248 (1980), as authority for his present contention; however, *Wandix* has no application to the issue before us. There, quite unlike the case at bar, testimony of police officers concerning an informant's "tip" went into evidence and no issue was presented challenging such testimony as to "relevance" or "inadmissible hearsay." Indeed, defendant sought to press the matter further and demanded to know the identity of the informant, so he could interview and perhaps elicit favorable alibi testimony from him. The question was simply, whether the trial court erred in failing to *force disclosure* of the informant's identity. Neither the ruling nor analysis in *Wandix* are apposite in the issue now before us. Nevertheless, it is worth noting that if the prosecutor's remark and evidence concerning the informant had been admitted unchallenged (as in *Wandix*) the facts here concerning the informant's role were so spatially and temporally removed, no serious contention could be urged that the trial court if requested (which it was not) would have been required to force disclosure of the informant's identity. Here the informant gave his tip sometime prior to and remote from the house ultimately placed under surveillance. The "tipster" was not present and of course neither participated in nor witnessed the two days of activity prior to commission of the crimes nor the events on the nights the crimes were committed. On the other hand, in *Wandix*, unlike the instant case, the defendant had endorsed alibi witnesses to testify in his behalf. The informant was the only lay witness available who might corroborate the testimony offered by the alibi witnesses. The informant in *Wandix* was involved in the drug sales transaction, and it was he who introduced one of the officers to the defendant as his partner and identified defendant, Wandix, as the seller of drugs. The informant was there in the presence of defendant and the officer, and followed defendant to the residence where the drugs were sold. No evidence of such participation in the incident or identification of defendant by an informant occurs in this case, and therefore the informant was not in a position to offer relevant identification testimony. The defendant in *Wandix* moved for disclosure during the trial and again on appeal. Such is simply not our case.

It has been suggested that *State v. Kirkland*, 471 S.W.2d 191 (Mo.1971), is controlling. We find it is not. In *Kirkland*, this Court found reversible error in permitting a police officer to relate that a named woman had told him she witnessed the defendant

getting into a taxi-cab soon before its driver was robbed. The witness was present and saw the defendant place himself in a position to commit the crime near the time or immediately prior to the robbery of the driver. Further, *Kirkland* has been distinguished as a case "in which the hearsay testimony *was relied on heavily by the state to identify the defendant* as the person who committed the crime and in which there was very little, if any, other evidence that connected the defendants . . . with the *offense with which they were charged.*" (Emphasis ours). *State v. Ford,* 495 S.W.2d 408, 414 (Mo.banc 1973); *State v. Harris,* 535 S.W.2d 145, 149 (Mo.App.1976). However, in the case *sub judice,* the information from the tipster was not relied on to identify defendant nor did it connect defendant with the criminal transaction charged. Because the emphasis was not crucially focused upon the truth of the remark in opening statement, and it could not be utilized to prove defendant's guilt of the crime charged, *Kirkland* is not applicable. The judgment is affirmed.

WELLIVER, MORGAN and HIGGINS, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, C. J., dissents in separate dissenting opinion filed and concurs in separate dissenting opinion of SEILER, J.

DONNELLY, C. J., withdraws his concurrence and dissents and concurs in separate dissenting opinion of SEILER, J.

SEILER, Judge, dissenting.

While agreeing in all respects with the dissenting opinion of Chief Justice Bardgett, I believe the situation warrants voicing some additional objections to what I consider to be a dangerous and unfair change in the rules of evidence and relevancy in criminal cases.

The principal opinion holds that the trial court erred in sustaining defendant's objection to testimony, at trial, of the police officer's testimony as to the informant's statements. This, of course, means that the officer's testimony regarding the informant's statement that *defendant* was selling heroin at 2918 Sheridan was admissible in evidence, as well as in the opening statement. None of the cases cited by the principal opinion support such a position. *State v. Harris,* 571 S.W.2d 443, 446 (Mo.App. 1978) does not stand for the proposition that the officer here could testify as to second hand information received that defendant was selling heroin at 2918 Sheridan to explain the officer's surveillance of the house. In *Harris,* the policeman testified that when he arrested four persons, including defendant, in an automobile containing recently stolen property, that "everybody in the car denied ownership of the property" and "nobody knew nothing about any of the property that was in the car." There is no similarity in fact or principle between the remarks admitted in *Harris* and the statement involving criminal activity of the defendant made in the present case. *Harris* does not support the principal opinion.

*State v. McRoberts,* 485 S.W.2d 70, 73 (Mo.1972) holds that two officers' testimony regarding a police radio communication describing an automobile used in an assault and robbery could be used to show probable cause for stopping and searching the automobile in which defendant was riding. There was no mention of defendant in the broadcast.

In *State v. Barnes,* 345 S.W.2d 130, 131–132 (Mo.1961), the trial court permitted two officers to testify that they received a description of a robbery suspect on the police radio. However, there was no mention of defendant as being the suspect. It is noteworthy that the trial court in *Barnes* would not permit the police officer to relate that part of the radio broadcast giving the description of the robbery suspect.

In *State v. Bright,* 269 S.W.2d 615, 623 (Mo.1954), several postal inspectors were permitted to testify that the superintendent of a dress manufacturer told them that dresses "were being misplaced or misappropriated" and that "we received reports that stuff was missing." The court held that

such testimony was used not to show that the dresses had been stolen, but rather as a background to the postal inspectors' subsequent activities. There was no mention in the above-quoted testimony of *who* was stealing the dresses or of anything about defendant.

In *State v. Lewis*, 576 S.W.2d 564, 566–567 (Mo.App.1979), two detectives were permitted to testify that they had received information that a certain cab stand was the locus of transactions in stolen property. The court held that the testimony was not used to show that the cab stand was a fencing location, but as background to the detectives' subsequent activities. There was no testimony as to *who* was fencing stolen property.

None of the cases cited by the principal opinion permitted the use of out of court declarations to establish the name, identity or prior criminal activity of the defendant when providing a background to subsequent activities of investigative authorities. In the case at bar, the prosecutor in his opening statement stated that the police had "received information that . . . heroin was being sold at 2918 Sheridan *by Paul Brooks*." (emphasis supplied). The principal opinion would hold that testimony to that effect was admissible at trial as well as permitting it in the opening statement. I cannot see how attributing the sale of heroin to Paul Brooks helps explain why the police were staking out 2918 Sheridan. They would have done the same had John Doe been selling heroin at 2918 Sheridan. The use of defendant's name was unnecessary and irrelevant to the purpose. Going on to identify defendant by name inevitably conveys to the jurors that in truth and in fact it is the defendant who is doing the selling of the heroin at the place the officers are watching. Never in the history of the court have we permitted this. The principal opinion says that thereby "the jury is not called upon to speculate on the cause or reasons for the officers' subsequent activities." Quite true—the jury now knows that it was because *defendant* was selling heroin at 2918 Sheridan that the officers were there. This is hearsay. The jury was led to believe that a person who was not present in court and not subject to cross-examination had told the officers that defendant was committing a crime.

This case is analogous to *Stamper v. State*, 235 Ga. 165, 219 S.E.2d 140 (1975), in which a witness testified that a battered child had told her that the appellant (her stepfather) had beaten her. It was argued that such testimony combined with testimony regarding bruises on the child's body explained the witness' subsequent conduct of obtaining a doctor to examine the child. The Georgia Supreme Court reversed defendant's conviction, declaring that "The statement of the child *naming the appellant* as the one who had beaten her was entirely unnecessary to explain the conduct of the witness in having the child examined by a physician." The statements of the child were held to be hearsay. 219 S.E.2d at 143 (emphasis supplied).

The law is properly explicated in *State v. Bankston*, 63 N.J. 263, 307 A.2d 65, 68 (1973), in which the Supreme Court of New Jersey stated:

> "It is well settled that the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so 'upon information received.' McCormick, Evidence (2d ed. 1972), § 248, p. 587. Such testimony has been held to be admissible to show that the officer was not acting in an arbitrary manner or to explain his subsequent conduct. . . . *State v. Barnes*, 345 S.W.2d 130, 132 (Mo.Sup.Ct.1961) . . . . However, when the officer becomes more specific by repeating what some other person told him concerning a crime by the accused the testimony violates the hearsay rule. . . . Moreover, the admission of such testimony violates the accused's Sixth Amendment right to be confronted by witnesses against him."

I would reverse and remand for a new trial.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent.

The trial court erred in overruling the defendant's objection to the prosecutor's statement to the jury that "the police work through informants" and "They [the police] were—they received information that narcotics were being sold—heroin was being sold at 2918 Sheridan by Paul Brooks." This was clearly hearsay and by this statement the prosecutor was asking the jury to give credence to the information received from an unidentified informant that a certain event was taking place—defendant was selling heroin at 2918 Sheridan. That is what the defendant was charged with doing and is precisely what the state sought to and did convict him of.

Later in the case a police officer was asked by the prosecutor how he first became aware of the house. Defendant's objection to this question was sustained in part. The officer was permitted to say he had become aware of the house but was not permitted to say *how* he had become aware of it. The prosecutor at this point remarked that the judge's ruling was inconsistent with his earlier ruling on the objection on this matter during opening statement and said that the prosecutor's opening statement established what the confidential informant had said.

The principal opinion states the trial court erred in sustaining defendant's objections to the police officer's recitation of what the confidential informant told him. There is no authority cited in support of that holding. Indeed, there is none to support it.

I could understand, although perhaps not agree with, a holding that the prosecutor's statement with reference to the informant's identification of the defendant is not prejudicial error in view of other evidence. However, it is palpably incorrect to say that the state may inform the jury, through the statement of the prosecutor or by the testimony of a witness, that a person not called as a witness has told the police that the defendant was selling heroin. That is pure hearsay and it is sophistry to justify its admission on the basis that the underlying, but unspoken, reason for its admission is so

that the jury will know why the police were keeping the house under surveillance. What the jury heard was that a person the police relied upon told the police that the defendant was selling heroin. To say that the jury would not consider that statement as some support for a finding that the defendant did sell heroin at that address is unrealistic.

One can assume that every time a police officer goes to a particular place in the course of his duties he does so for a reason. That reason will, more often than not, be the information he has received from others, perhaps informants, that a crime is or will be committed by someone. That information will always be something the state would like to tell the jury about—in opening statement or testimony—and it will almost always be hearsay and the defendant will be denied his right to cross-examine the one upon whose credibility the information depends.

The court erred in overruling the objection of the defendant. *State v. Kirkland,* 471 S.W.2d 191 (Mo.1971); *State v. Chernick,* 280 S.W.2d 56, 59 (Mo.1955).

The invitation found in the principal opinion to prosecutors to make statements and offer evidence as to what an unidentified third part tells the police, on the ground that the jury will better understand why the police went to a particular place or arrested an individual, without that person being subject to cross-examination, will be accepted. Its acceptance will result in numerous reversals.

This Court would not allow the plaintiff's attorney in a damage suit to explain to the jury that the reason the police were at the scene was because somebody called the police and told them the defendant in the case had run a red light and might try to get away. Yet here the court allows the prosecutor to tell the jury that someone told the police the defendant was selling heroin. To allow this assertion of defendant's guilt as to the offense charged in order to "explain" why the police were present at defendant's house is a charade. The idea that such

information will not be persuasive as to guilt is unrealistic.

I dissent.