STATE of Missouri,
Plaintiff-Respondent,

v.

Robert Lee LEACH,
Defendant-Appellant.

No. 12502.

Missouri Court of Appeals,
Southern District,
Division Three.

May 11, 1982.

James B. Crenshaw, Centerville, for defendant-appellant.

John Ashcroft, Atty. Gen., Lew A. Kollias, Kris Green, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Judge.

A jury found defendant guilty of stealing "without consent" property having a value exceeding $150, a class C felony, [§ 570.030, Par. 3(1)],[1] and he was sentenced to four years' imprisonment. Defendant appeals.

Defendant's sole contention is that the evidence was insufficient to support the verdict for two reasons: (a) There was no

1. Unless otherwise indicated all references to      statutes are RSMo 1978, V.A.M.S.

evidence of defendant's presence at the time and place of the crime; and (b) there was no evidence "to show defendant's active participation in the appropriation of the barbed wire."

■ In ruling defendant's contention this court must view the evidence in the light most favorable to the state, accept all substantial evidence and all legitimate inferences fairly deducible therefrom which tend to support the verdict, and reject contrary evidence. *State v. Petrechko*, 486 S.W.2d 217, 218[1] (Mo.1972). All evidence unfavorable to the state must be disregarded and the submissibility of the case will be determined upon the basis of all of the evidence, including those portions of defendant's evidence which favor the state. *State v. Wood*, 553 S.W.2d 333, 334 (Mo. App.1977).

Defendant was charged with stealing 26 rolls of barbed wire (2 rolls of U. S. Steel wire and 24 rolls of Sterling wire) owned by Orin Mann and Jerry Mann. The offense allegedly occurred on December 10, 1980, at the Mann farm in Reynolds County. In June 1979 Jerry Mann bought 27 rolls of Sterling barbed wire. Jerry's brother Orin previously bought 6 rolls of Sterling wire and they already owned 2 or 3 rolls of U. S. Steel wire. All of the wire was put "in the cellar" at the Mann farm.

On Wednesday, December 10, "about dark," while the Manns were away from their farm, their neighbor Tom Gillespie "checked to see if everything was all right" and the "barbed wire was in place and everything looked fine." At noon on December 12 Orin Mann returned to the farm and discovered that several items, including 33 rolls of barbed wire and a Lincoln welder, had been stolen.

On Thursday, December 11, at approximately 7:30 a.m., defendant and Ronald White went to the farm of Darryl Smith in Wayne County. The two men were in a truck. The bed of the truck contained some barbed wire and a Lincoln welder. Defendant told Smith that he had some barbed wire to sell at $15 a roll. Smith asked defendant if the wire was "hot" and de-

fendant said, "yes, it is," and that it "came from a farm in Reynolds County." Defendant stated that he needed some money to buy a truck license. Smith told defendant that "I would rather buy his truck license than to fool with stuff like that." Defendant also offered to sell Smith the Lincoln welder but set no price on it.

The farm of Tom Alexander adjoins the Smith farm. Smith told defendant to go to Alexander's place because Alexander might need some wire.

At approximately 8 a. m. on December 11 defendant and White arrived at the Alexander farm. Alexander bought 26 rolls of the barbed wire from defendant and gave defendant a check for $390. Defendant was the payee of the check and defendant later cashed it. Defendant told Alexander "that the wire came off a wrecked truck and the driver of the wrecked truck said that the insurance company would pay for it and 'they' could have as much as they wanted of it." Defendant and White unloaded the wire at the Alexander farm and the wire stayed there until the sheriff of Reynolds County picked it up on December 27.

On December 26 the sheriff of Wayne County telephoned the sheriff of Reynolds County and asked the latter to come to Wayne County. The two sheriffs went to the Alexander farm and recovered the 26 rolls of barbed wire, 24 of the rolls being Sterling wire and 2 rolls being U. S. Steel wire. Jerry Mann identified the 26 rolls which Alexander purchased from defendant as being part of the wire stolen from the Mann farm.

Sec. 570.030, Par. 1 reads: "A person commits the crime of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit or coercion." The definition of "appropriate" is: "To take, obtain, use, transfer, conceal or retain possession of." § 570.010(3). As pointed out in *State v. Hardin*, 627 S.W.2d 908, 910 (Mo.App.1982), the definition of "appropriate" found in § 570.010(3) is based on the definition of "exercising dominion"

contained in § 560.156 RSMo 1969, now repealed, which defined "stealing." Sec. 570.-010(8) contains three alternative definitions of "deprive," as used in § 570.030, Par. 1. One of those definitions is: " 'Deprive' means . . . (c) To use or dispose of property in a manner that makes recovery of the property by the owner unlikely."

 The unexplained possession of goods stolen in a recent burglary creates an inference of guilt both as to the burglary and the theft, *State v. Roberts,* 579 S.W.2d 685, 688–689[3–5] (Mo.App.1979), but if the possession is not exclusive but is joint with another person, there must be some evidence of defendant's guilt in addition to the inference raised by the joint possession. *State v. Jones,* 610 S.W.2d 396, 398[1] (Mo. App.1980); *State v. Lewis,* 576 S.W.2d 564, 566[2] (Mo.App.1978); *State v. Pruett,* 522 S.W.2d 823, 824[2] (Mo.App.1975). Even if defendant offers an explanation as to his possession, and even if the explanation is not impeached, the jury may disbelieve his explanation and draw an inference unfavorable to defendant based on his possession. *State v. Cobb,* 444 S.W.2d 408, 414[10] (Mo. banc 1969); *State v. Potter,* 560 S.W.2d 29, 30 (Mo.App.1977). In *State v. Potter,* supra, defendant's "joint possession and joint efforts" to sell the recently stolen property met the foregoing requirements and supported a conviction of stealing.

Although there was no direct evidence that defendant was present at the scene of the burglary and the initial taking of the barbed wire in Reynolds County,[2] defendant and Ronald White were in joint possession of the barbed wire in Wayne County within approximately 12 hours, or less, after the burglary. Defendant knew that the wire had been stolen from a farm

in Reynolds County because he so informed Darryl Smith. When Smith refused to buy the barbed wire defendant, within the hour, sold it to Alexander for $390. As stated in *State v. Lewis,* supra, "This is not a case of mere passive presence with stolen property; the defendant was actually handling the property and exercising affirmative action toward it." The foregoing evidence justified the jury in finding that the defendant was guilty of stealing the barbed wire in Reynolds County. *State v. Potter,* supra.

The judgment is affirmed.

BILLINGS, P. J., MAUS, C. J., and TITUS and PREWITT, JJ., concur.

---

**2.** The state's verdict-directing instruction submitted that defendant's act of "appropriating" the 26 rolls of barbed wire took place in Reynolds County. As the opinion holds, the evidence was sufficient to support that submission. It is unnecessary to determine whether the events in Wayne County, including the conversation with Darryl Smith and the sale to Tom Alexander, would have justified charging and submitting a Wayne County offense when

coupled with evidence that the wire was stolen property.

See also § 541.070 which reads: "When property is stolen . . . in one county and brought into another the offender may be prosecuted for such stealing . . . in the county into which such stolen property was brought in the same manner as if such stealing . . . had been committed in that county."